NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**AUTOMATED TRACKING SOLUTIONS, LLC,**
*Plaintiff-Appellant*

**v.**

**THE COCA-COLA COMPANY,**
*Defendant-Appellee*

---

2017-1494

---

Appeal from the United States District Court for the Northern District of Georgia in No. 1:15-cv-04348-WSD, Judge William S. Duffey, Jr.

---

Decided: February 16, 2018

---

ROBERT EVAN SOKOHL, Sterne Kessler Goldstein & Fox, PLLC, Washington, DC, argued for plaintiff-appellant. Also represented by NIRAV DESAI, LORI A. GORDON, PAULINE PELLETIER.

SCOTT J. PIVNICK, Alston & Bird LLP, Washington, DC, argued for defendant-appellee. Also represented by ALAN SHANE NICHOLS, SIRAJ M. ABHYANKAR, Atlanta, GA.

---

Before MOORE, WALLACH, and STOLL, *Circuit Judges*.

STOLL, *Circuit Judge*.

The Coca-Cola Company moved for judgment on the pleadings that Automated Tracking Solutions, LLC's ("ATS's") asserted claims are not directed to patent-eligible subject matter under 35 U.S.C. § 101 (2012). The district court granted Coca-Cola's motion and ATS appeals. Given the specific facts in the record before us, including the patentee's admissions, we affirm the district court's judgment of ineligibility.

BACKGROUND

Dr. Fred H. Sawyer is the founder and owner of ATS and the sole named inventor on all four patents ATS asserts against Coca-Cola: U.S. Patent Nos. 7,551,089; 7,834,766; 8,842,013; and 8,896,449 (collectively, "Asserted Patents"). As defined in ATS's own complaint, the patents are directed to "inventory control." J.A. 225 ¶ 11; *see* J.A. 225–34 ("*Am. Compl.*"). ATS argued that, conventionally, inventory control processes had been performed by hand or not all. *Id.* ¶¶ 11, 12. Dr. Sawyer sought to integrate radio frequency identification ("RFID") technology into these manual processes. To this end, he "designed and built an operable system for performing [inventory control] functions" that was the genesis of the Asserted Patents. *Id.* ¶ 14.

All four Asserted Patents are titled "Method and Apparatus for Tracking Objects and People" and share a common specification.[1] As ATS explains in its complaint,

---

[1]    The '013 and '449 patents are continuations of the applications that led to the '766 patent, which in turn is a continuation of the application that led to the '089 patent. For ease of reference, we cite the '089 patent when discussing the common specification.

the Asserted Patents relate to processes and systems to perform the functions of "identification, tracking, location, and/or surveillance of tagged objects anywhere in a facility or area." *Id.* ¶¶ 14. The common specification states that prior art inventory control systems had significant drawbacks and that the claimed invention "reduce[s] human responsibility" and provides "an automatic locating and tracking system." '089 patent col. 1 ll. 48, 63.

To achieve this, Dr. Sawyer incorporated RFID technology into his claimed invention. RFID is "a means of storing and retrieving data through electromagnetic transmission to a radio frequency compatible integrated circuit." *Id.* at col. 3 ll. 8–10. As to hardware, an RFID system could be as simple as just three components: a scanner,[2] a transponder, and a computer. *Id.* at col. 3 ll. 10–12. Indeed, at the time of the invention, various companies, including Microchip, SCS, Intermec, and Texas Instruments, were already manufacturing RFID products and providing a great deal of explanatory material. *Id.* at col. 3 ll. 5–7. According to the specification, the inventions used RFID technology, computer programming, database applications, networking technologies, and hardware elements to achieve the stated goal of locating, identifying, tracking, and surveilling objects. *Id.* at col. 2 ll. 45–50.

With this understanding of the common specification, we turn to the claims. In a § 101 analysis, courts may evaluate representative claims. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). To that end, ATS identified four representative claims in its Opposition to Defendant's Motion for Judgment on the Pleadings—one independent claim to represent each patent: claim 49 of

---

[2]     ATS uses "reader" and "scanner" interchangeably. *See* Appellant Br. 5 n.3.

the '089 patent; claim 1 of the '766 patent; claim 1 of the '013 patent; and claim 1 of the '449 patent.[3] J.A. 1168–70.

The district court, however, adopted Coca-Cola's proposal to select only two of the above claims as representative claims: (1) claim 49 of the '089 patent to represent the claims of the '089 and '013 patents; and (2) claim 1 of the '766 patent to represent the claims of the '766 and '449 patents. ATS conceded at oral argument that the district court's selection of these two representative claims was proper. Oral Arg. at 35:25–32, http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2017-1494.mp3. ATS also conceded that the district court's decision not to analyze ATS's two additional proposed representative claims (claim 1 of the '013 patent and claim 1 of the '449 patent) did not affect the § 101 analysis. *Id.* at 35:32–42. Accordingly, we restrict our analysis to the claims ATS agrees are representative: claim 49 of the '089 patent and claim 1 of the '766 patent.

Representative claim 1 of the '766 patent recites:

1. A system for locating, identifying and/or tracking of an object, the system comprising:

> a first transponder associated with the object;

> a reader that is configured to receive first transponder data via a radio frequency (RF) signal from the first transponder;

---

[3] ATS's complaint lists its asserted claims as "including, but not limited to" these four enumerated claims. The parties have not disputed that invalidation of these four asserted claims—or even the two analyzed claims discussed below—would support the district court's grant of judgment on the pleadings in this case.

> *an antenna* in communication with the reader and having a first *coverage area*;
>
> a processor coupled to the reader, wherein the processor is configured to receive the first transponder data from the reader and to generate detection information based on the received first transponder data, the detection information comprising first sighting and last sighting of the first transponder in the first *coverage area*; and
>
> a storage device that is configured to store the detection information.

'766 patent col. 20 l. 58 – col. 21 l. 6 (emphases added).[4] The district court granted Coca-Cola's motion for judgment on the pleadings that all asserted claims are patent-ineligible under § 101. *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 223 F. Supp. 3d 1278, 1292 (N.D. Ga. 2016) ("*Ineligibility Op.*") (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014)). Under *Alice* step one, the district court concluded that the representative claims were directed to the patent-ineligible abstract idea of "collecting data, analyzing it, and determining the results based on the analysis of data." *Id.* at 1289. The district court determined under *Alice* step two that the claims lacked an inventive concept because nothing in the claim limitations or their ordered combination was sufficient to transform the abstract idea into a patent-eligible application. *Id.* at 1290. Accordingly, the district court held all four patents ineligible under § 101.

ATS appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

---

[4] For reasons explained below, we do not recite representative claim 49 of the '089 patent in full here.

DISCUSSION

We apply the procedural law of the regional circuit when reviewing a district court's grant of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Merck & Co. v. Hi–Tech Pharmacal Co.*, 482 F.3d 1317, 1320 (Fed. Cir. 2007). The Eleventh Circuit reviews a grant of judgment on the pleadings de novo. *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (internal quotation marks and citation omitted). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party." *Id.* We must deny a judgment on the pleadings if a comparison of the averments in the competing pleadings reveals a material dispute of fact. *Id.*

Patent eligibility under § 101 is a question of law that may contain underlying issues of fact. *See Berkheimer v. HP Inc.*, No. 2017-1437, 2018 WL 774096, at *5 (Fed. Cir. Feb. 8, 2018) (citing *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1325 (Fed. Cir. 2016)). We review the district court's ultimate conclusion on patent eligibility de novo. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017). We look to the test articulated in *Alice* to determine whether a claim is eligible for patenting under § 101. *See* 134 S. Ct. at 2355. Pursuant to *Alice*'s two-part test, we decide first "whether the claims at issue are directed to" a patent-ineligible concept, namely a law of nature, natural phenomena, or abstract idea. *Id.* at 2354–55. If the answer is yes, we then consider the claim elements, both individually and as an ordered combination, to determine whether they contain an "inventive

concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73, 78 (2012)).

This case reminds us that we are a "court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). As a general rule, we cannot consider claims and arguments that were not presented to the district court. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976). As discussed above, ATS limited its eligibility arguments to certain representative independent claims, agreeing that eligibility of the remaining claims would stand and fall with those representative claims. *See In re Kaslow*, 707 F.2d 1366, 1376 (Fed. Cir. 1983). Thus, we must confine our review to these representative claims.

I

The *Alice* step-one analysis requires us to consider the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). On their face, the representative claims are directed to systems "for locating, identifying and/or tracking of" an object using RFID components. '766 patent, claim 1; '089 patent, claim 49. The common specification further describes the background of the invention as related to "locating and tracking" objects, and that the claimed invention "reduce[s] human responsibility" and provides "an automatic locating and tracking system." '089 patent col. 1 l. 15 – col. 2 l. 22. As discussed further below, the claims achieve this by collecting data from sensors, analyzing that data, and determining results based on the analysis of data. For the reasons that follow, we conclude that the claims are directed to an abstract idea under *Alice* step one.

ATS's primary argument is that the representative claims are analogous to the patent-eligible claims in

*Thales Visionix Inc. v. United States*, 850 F.3d 1343 (Fed. Cir. 2017).  There, the claims recited a system for tracking the motion of an object relative to a moving reference frame, comprising inertial sensors mounted on the tracked object and the moving reference frame, and a third element to receive the sensors' signals and determine the orientation of the object.  *See id.* at 1345–46.  We found the claims patent-eligible under *Alice* step one because they were "directed to systems and methods that use inertial sensors in a non-conventional manner to reduce errors in measuring the relative position and orientation of a moving object on a moving reference frame."  *Id.* at 1348–49; *see id.* at 1347 (explaining that claims that function differently from "conventional" technologies may be found non-abstract under step one and citing *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016)).

ATS argues that, like the claimed arrangement of sensors in *Thales*, the claims here "specify *a particular configuration* for using the electromagnetically transmitted data to more accurately and systematically determine the location, identity, and movement of transponders *among antenna coverage areas* using specially programmed readers, storage devices, and processors configured to perform those functions."  Appellant Br. 42 (emphases added).  Our problem with ATS's argument does not lie with its contention that claims directed to specialized components of an RFID system or a specialized arrangement of components in an RFID system should be patent-eligible.  Rather, our concerns lie with ATS's portrayal of the breadth of the representative claims.  The representative claims simply do not require a particular configuration or arrangement of RFID system components.  Nor do the representative claims require multiple antenna coverage areas.  Some of the dependent claims may well recite such elements, but our review is limited to the representative claims.

For example, representative claim 1 of the '766 patent is directed to an RFID system that detects and stores transponder IDs and associated detection information to determine the "first sighting and last sighting of the first transponder in the first coverage area." '766 patent col. 20 l. 57 – col. 21 l. 6 (claim 1). The system comprises just a few elements: an antenna with a first coverage area, a first transponder, a reader, a processor, and a storage device. The claim does not recite any "particular configuration" or specialized arrangement of the RFID system components. It does not specify the relative location of the claimed components. It only requires a single antenna, and does not specify a particular configuration for the antenna to achieve the allegedly more systematic determination of the location, identity, and movement of the transponders. *See* Appellant Br. 42. At oral argument, ATS even conceded that all RFID antennas have coverage areas, and that the claimed antenna in representative claim 1 does not differ from conventional RFID antennas in that regard. Oral Arg. at 6:23–50. For these reasons, we conclude that claim 1 of the '766 patent is directed to an abstract idea under *Alice* step one.

As to the second representative claim, claim 49 of the '089 patent, ATS concedes that it does not claim a "coverage area." Oral Arg. at 6:23–50. Nor does claim 49 recite any additional elements beyond those found to be directed to an abstract idea under our analysis of claim 1 of the '766 patent. We thus conclude that claim 49 is also directed to an abstract idea under *Alice* step one. Given the record and ATS's concession that the two claims analyzed by the district court are representative of all the claims in all four patents, we do not see any error in the district court's conclusion that the asserted claims are directed to an abstract idea.

II

Under the second step of the *Alice* analysis, we examine the claim limitations "more microscopically," *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016), to determine whether they contain "additional features" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355, 2357 (quoting *Mayo*, 566 U.S. at 78). "Mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea. Rather, the components must involve more than performance of well-understood, routine, conventional activit[ies] previously known to the industry." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (citing *Alice*, 134 S. Ct. at 2359 (internal quotations omitted)).

Our analysis of the representative claims here uncovers no inventive concept in the individual claim limitations or their ordered combination. The representative claims are quite broad, reciting uses of RFID system components recognized in the specification to be routine and conventional. The claims do not use these conventional RFID components in a non-conventional combination or arrangement. Instead, the claims merely disclose collecting data from a particular source—RFID transponders—and analyzing that data. Whether we view the claim elements individually or as an ordered combination, the claims do not contain an inventive concept sufficient to confer patent eligibility.

ATS argues that, at the time of the invention, RFID was a developing technology and that the district court erred in resolving a disputed fact question—whether the claims recite routine and conventional uses of an RFID system—in Coca-Cola's favor. We have held that "whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan

in the relevant field is a question of fact." *Berkheimer*, 2018 WL 774096, at \*5. Furthermore, we must accept all plausible factual allegations in ATS's complaint as true. *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016). But the complaint alleges nothing to support ATS's contention that RFID was a developing technology. *See generally Am. Compl.* Nor does the complaint allege that any of the hardware components in the representative claims—either alone or in combination as a system—are anything but well-understood, routine, and conventional. *See id.*

Nor does the specification support ATS's contention that there is a factual dispute regarding whether the claims recite routine and conventional RFID components. We acknowledge that the specification states that "the RFID technology employed by the present invention is a rapidly developing technology." '089 patent col. 3 ll. 4–5. But the specification also more pointedly indicates that the recited components of the claimed RFID system were conventional. *Id.* at col. 3 ll. 4–5, 10–12. Indeed, the specification states that a conventional "simple RFID system may be composed of three components: a scanner, a transponder, and a computer." *Id.* at col. 3 ll. 10–12. These are the same conventional components recited in the representative claims. On the record before us, it was not improper for the district court to conclude that the claims were ineligible on the pleadings. The complaint at issue has no allegations, which when accepted as true, would even create a factual issue, and ATS's specification indicates that the components of the claimed invention are conventional.

Because representative claim 49 of the '089 patent is broader than representative claim 1, we conclude that it also does not add an inventive concept under *Alice* step two. Given the record and ATS's concession that the two claims analyzed by the district court are representative of all the claims in all four patents, we do not see any error

in the district court's conclusion that the asserted claims do not possess an inventive concept sufficient to confer patent eligibility.  Nor do we see any error in the district court's ultimate conclusion that the asserted claims are directed to patent-ineligible subject matter under § 101.

## CONCLUSION

We have considered ATS's remaining arguments and find them unpersuasive.  Our analysis in this appeal rests heavily on ATS's selection of representative claims and admissions in oral argument.  On these unique facts, we affirm the district court's grant of Coca-Cola's motion for judgment on the pleadings that the asserted claims of ATS's Asserted Patents are ineligible under § 101 because they are directed to unpatentable subject matter.

## **AFFIRMED**

### COSTS

Costs to Appellee.